**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGINNA LOCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File No. <u>1:21-cv-04406-ELR-JKL</u> |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CITY OF ATLANTA, GEORGIA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES</u>

Plaintiff Georginna Lockett files this Complaint for Equitable Relief and Damages against the City of Atlanta, Georgia (the "City") showing the Court as follows:

### <u>Introduction</u>

1.     This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII") to correct unlawful employment practices on the basis of gender and because the City retaliated against Ms. Lockett for engaging in protected activity under Title VII.

2.     This is also an action for retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

3.     Ms. Lockett seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages, liquidated damages, and attorney's fees and costs of litigation.

## Jurisdiction and Venue

4.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.     Venue is proper in this district and division under 28 U.S.C. § 1391 because the City of Atlanta conducts business in this district and division and the unlawful actions and practices were committed within the Northern District of Georgia.

## Exhaustion of Administrative Remedies

6.     Ms. Lockett timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission – Charge No. 410-2020-03140 – on February 4, 2020 and amended the charge twice.

7.     Ms. Lockett received a Notice of Right to Sue from the Department of Justice.

8.     Ms. Lockett brings this suit within ninety (90) days of the receipt of her Notice of Right to Sue and, thus, exhausted her administrative remedies.

**The Parties**

9.      Ms. Lockett is a citizen of the United States, a resident of the State of Georgia, and submits herself to the jurisdiction of this Court.

10.     Ms. Lockett is and, at all times relevant hereto, was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

11.     At all times relevant, Ms. Lockett was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*.

12.     Ms. Lockett had been employed with the City for more than 12 months and worked more than 1250 hours in the 12 months preceding the serious health condition for which she took FMLA leave.

13.     The City of Atlanta ("The City") is a municipal corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

14.     The City is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

15.     The City is an employer engaged in commerce or in an industry affecting commerce within the meaning of the Title VII, 42 U.S.C. § 2000e(b). and employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

3

16.     The City is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

17.     The City had more than 50 employees within a 75-mile radius of the location in which Ms. Lockett was employed in each of 20 or more consecutive calendar weeks in the current or preceding year within the meaning of 29 U.S.C. § 2601 *et seq*.

18.     The City of Atlanta may be served with process by serving the Mayor at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, Atlanta, Georgia 30303.

### Statement of Facts

19.     Ms. Lockett began employment with the City in January 2007 as a Water Complex Engineer.

20.     In March 2013, Ms. Lockett was promoted to Water Complex Superintendent and in June 2016, was promoted to Watershed Manager II.

21.     In approximately late 2016 or early 2017, the City offered Ms. Lockett a promotion to Watershed Director but Ms. Lockett declined the position because she had recently had a baby.

22.     Subsequent to Ms. Lockett declining the promotion, the City promoted Quinton Fletcher to the position.

23.     Throughout her employment to this point, Ms. Lockett did not receive any discipline and her performance was rated highly effective.

24.     In May 2019, Ms. Lockett and Mr. Fletcher applied and were both interviewed for the Deputy Commissioner ("DC") of Office of Water treatment & Reclamation ("OWTR") position.

25.     An interview panel, which included the Department's Commissioner Kishia L. Powell, interviewed Ms. Lockett for the DC position.

26.     While Mr. Fletcher was selected to fill the DC position, the panel's interview comments spoke highly of Ms. Lockett's leadership capabilities and indicated that Ms. Lockett would be a great candidate for the DC position.

27.     On May 30, 2019, Commissioner Powell promoted Ms. Lockett to Interim Watershed Director.

28.     Following Commissioner Powell's appointment of Ms. Lockett to Interim Director, DC Fletcher began complaining that he was not allowed to make the appointment and complaining that he would have preferred to appoint a male to the position.

29.     The official memo announcing Ms. Lockett's promotion to Interim Watershed Director was delayed to July 2019.

30.     On August 12, 2019, Watershed Director Sabrina D. Watts, a 38-year employee of the City's Watershed Department, complained to Human Resources Director Kellye Terrell and Tenill Ransom that DC Fletcher was subjecting her to a hostile work environment and retaliating against her for over a year and noted that she had complained about his conduct previously on August 30, 2018, February 24, 2019, March 12, 2019, and May 29, 2019, and nothing had been done to rectify her concerns.

31.     No actions were taken against DC Fletcher for his discriminatory and retaliatory conduct.

32.     In November 2019, DC Fletcher reprimanded Ms. Lockett based on trumped up allegations.

33.     When Ms. Lockett received the written warning, she scheduled a meeting with Commissioner Powell through her Chief of Staff Andrada Butler.

34.     When Ms. Lockett spoke with Ms. Butler, she told her that DC Fletcher had a problem with authoritative women and that he did not treat Ms. Lockett the same as her male peer, Derek Stewart.

35.     For example, both Derek Stewart and Manual Solomon did not follow DC Fletcher's leave request protocol that female employees, including Ms. Lockett, were required to use.

36.     DC Fletcher did not require Mr. Stewart or Mr. Solomon to use their City accrued time for vacations or sick leave, but he did require female employees, including Ms. Lockett, to do so.

37.     Even when Ms. Lockett followed the protocol for leave, DC Fletcher questioned Ms. Lockett's FMLA leave use repeatedly to Payroll Coordinator Kristen Graham and routinely scrutinized Ms. Lockett's use of leave.

38.     DC Fletcher went so far as to direct Ms. Graham to rescind Ms. Lockett's leave requests.

39.     During her employment, Mr. Stewart was attending meetings that should have been attended by Ms. Lockett, but DC Fletcher did not invite her to the relevant meetings and specifically excluded her from attending the meetings.

40.     DC Fletcher also approved more of Mr. Stewart's projects while scrutinizing more harshly and waitlisting Ms. Lockett's projects.

41.     Ms. Lockett and her female coworkers observed that their male coworkers could disagree with DC Fletcher, offer new suggestions, and make executive decisions concerning operations in their programs and were not categorized as insubordinate, rude, or not a team player.

42.    On the other hand, when Ms. Lockett and her female colleagues made independent decisions regarding operations in the programs they supervised, they were chastised, disciplined, and their leadership abilities were questioned.

43.    DC Fletcher had similar patterns of retaliation and disparate treatment with other females in leadership.

44.    While Walter Mobley, EEO Manager for the City, knew about Ms. Watt's and Ms. Lockett's complaints that DC Fletcher was discriminating and retaliating against them, Mr. Mobley took no action to investigate the complaints or address their concerns.

45.    Ms. Lockett held the position of Interim Watershed Director for eleven months.

46.    During that time, no attempt was made to fill the position permanently or advertise the permanent position.

47.    On the other hand, when Mr. Stewart held an interim Director position, he was permanently placed in the position after six months.

48.    Ms. Lockett's male successor in the Watershed Director position (Babatunde Kuku) held the position on an interim basis for only three months when efforts were made to permanently give him the position.

49.    In November 2019, Ms. Lockett met with Commissioner Powell, who reviewed the documentation underlying the warning and Ms. Lockett's rebuttal to the same.

50.    During the process, Commissioner Powell stated to DC Fletcher that she hoped he was treating her (Ms. Lockett) the same way he was treating him (Mr. Stewart).

51.    Commissioner Powell rescinded the discipline given to Ms. Lockett by DC Fletcher and the discipline was removed from Ms. Lockett's personnel records.

52.    Following Ms. Lockett's complaint and Commissioner Powell's rescission of the discipline, Commissioner Powell told Ms. Lockett that she did not see how she and DC Fletcher could come back from this write up.

53.    Nevertheless, Commissioner Powell did ask Ms. Butler to meet with Ms. Lockett and DC Fletcher.

54.    At the lunch meeting with Ms. Lockett, Ms. Butler, and DC Fletcher, DC Fletcher started the meeting by saying he believed he and Ms. Lockett were groomed to be competitive by their previous boss, R.T. Parker.

55.    Ms. Lockett disputed this hostile statement.

56.    DC Fletcher also admitted to Ms. Butler that he never wanted Ms. Lockett for the position but wanted to make his own choice about who to promote.

9

57.     Between January 27, 2020 and February 24, 2020, as a result of the disparate treatment and retaliation suffered at the hands of DC Fletcher, Ms. Lockett was under doctor's care for serious health conditions – major depression and anxiety disorder – made the City aware of the same, and requested and was ultimately granted FMLA leave.

58.     On January 27, 2020, while in her physician's office, Ms. Lockett received a call from Tony Cash, Plant Manager of the Chattahoochee Water Treatment Plant.

59.     Mr. Cash told Ms. Lockett there was an emergency at the Water Plant and needed her assistance right away because the facility was out of Fluoride Chemical treatment.

60.     Ms. Lockett understood the critical nature of the Chattahoochee Plant's predicament and contacted the City's Department of Procurement and requested that they immediately purchase Fluoride for the Plant.

61.     Ms. Lockett left her doctor's appointment, went to Atlanta City Hall, and obtained the Fluoride purchase order from Procurement and hand-delivered it to Commissioner Powell's office for signature.

62.     Due to Ms. Lockett's immediate response to the emergency, the Fluoride was purchased for the Chattahoochee Plant the following day, January 28, 2020.

63.     On January 28, 2020, Ms. Lockett requested a medical leave of absence for her serious health condition.

64.     On January 29, 2020, Kristen Graham placed Ms. Lockett's leave notice in KRONOS.

65.     Later in the afternoon on January 29, 2020, DC Fletcher called Ms. Graham and told her to rescind Ms. Lockett's leave.

66.     On or about January 30, 2020, while Ms. Lockett was on FMLA, she was called by Keisha Dixon to come in to discuss the Fluoride issue as an investigation had been requested by DC Fletcher.

67.     Despite DC Fletcher having been previously informed of the Fluoride problem and having done nothing to resolve the problem, when he learned Ms. Lockett handled the matter, he falsely accused her of misconduct.

68.     DC Fletcher told Ms. Dixon that Ms. Lockett was on FMLA and sarcastically said Ms. Lockett would refuse to come in, but Ms. Lockett fully cooperated with the investigation.

69.     Ms. Lockett filed a Charge of Discrimination with the EEOC alleging gender discrimination and retaliation on February 4, 2020 of which the City was notified on February 5, 2020.

70.     In February 2020, while Ms. Lockett was on approved FMLA leave and after she filed her EEOC charge and the City was notified of the same, DC Fletcher contacted the City's Office of Safety, Security and Emergency Management and requested an investigation of Ms. Lockett for alleged employee misconduct for allegedly failing to inform him of a supply problem at the Chattahoochee Plant.

71.     The Investigation Report concluded that DC Fletcher learned of Chattahoochee's Fluoride supply problem on January 23, 2020, well before the Plant's Fluoride was empty.

72.     DC Fletcher submitted false reports regarding the outcome of the investigation and Ms. Lockett was subjected to constant attacks by DC Fletcher.

73.     DC Fletcher had two instances when he ran out of chemicals, and he was not subjected to investigation or discipline as a result of either incident.

74.     In February 2020, Ms. Lockett provided her Charge of Discrimination to Commissioner Powell and reiterated that she was being subjected to gender discrimination and retaliation by DC Fletcher.

12

75.     In April 2020, Ms. Lockett became ill with COVID-19, an FMLA-covered serious health condition, and was again continuously absent from work through April 26, 2020.

76.     On April 30, 2020, Commissioner Powell demoted Ms. Lockett from the Interim Director position and cut her pay allegedly as a result of the Fluoride incident that actually showed DC Fletcher's misconduct.

77.     DC Fletcher was not demoted, nor was his pay cut because of the investigation into the Fluoride incident.

78.     Since Ms. Lockett filed her Charge of Discrimination on February 4, 2020 and amended it in May 2020, the City has continued to discriminate and retaliate against her.

79.     Ms. Lockett interviewed for a Director position in Watershed in May 2020 and scored high during her interviews.

80.     The Hiring Manager for the position submitted Ms. Lockett's name for a second interview for the position but was rejected.

81.     Rather than promote Ms. Lockett, the Director position was reposted as vacant and not filled until after Ms. Lockett was constructively discharged.

82.     Ms. Lockett took intermittent FMLA leave throughout the summer of 2020 to care for her daughter who suffered from a serious health condition.

13

83.    In August 2020, while Ms. Lockett was on FMLA, DC Fletcher continued to target Ms. Lockett.

84.    DC Fletcher called Ms. Graham and told her to make sure Ms. Lockett submitted leave requests while out on FMLA.

85.    Ms. Graham was confused by DC Fletcher's request, because again no other male manager had to follow this process, only Ms. Lockett was required to do this.

86.    Ms. Lockett applied for the Director position she held before her demotion, was interviewed for the position on September 18, 2020, and was not offered the position.

87.    The Director position was offered to and accepted by Mr. Kuku who was a former subordinate of Ms. Lockett who Ms. Lockett promoted to Plant Manager in October 2019.

88.    Ms. Lockett trained Mr. Kuku for his previous position.

89.    Mr. Kuku did not meet the posted qualifications for the position, nor did he apply for the position when it was posted.

90.    Instead, after the position closed for applicants, DC Fletcher contacted Mr. Kuku and told him he was reopening the position to allow Mr. Kuku to apply.

91.     Mr. Kuku did not initially want the position, but was forced to interview to prevent Ms. Lockett, a qualified female, from having an opportunity to obtain the position.

92.     The panel that interviewed the candidates included DC Fletcher and Tenill Ransom, both of whom Ms. Lockett complained about discriminating and retaliating against her.

93.     On September 30, 2020, Ms. Lockett was constructively discharged.

## COUNT I
## Gender Discrimination in Violation of Title VII

94.     Ms. Lockett incorporates by reference all the preceding paragraphs of the Complaint.

95.     Ms. Lockett is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

96.     The City is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

97.     The City discriminated against Ms. Lockett because of her sex by among other things, subjecting her to different terms and conditions of employment than her male coworkers, demoting her from Interim Director of Watershed, and by twice failing to promote her to Director of Watershed because of her gender.

15

98.    The gender discrimination to which Ms. Lockett was subjected by the City violated Title VII, thus entitling her to all appropriate relief provided under the statute.

99.    The City's actions were willful, deliberate, and intended to cause Ms. Lockett harm and/or were committed with reckless disregard of the harm caused to Ms. Lockett and were in derogation of her federally protected rights.

100.    As a direct and proximate result of the City's actions, Ms. Lockett has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation and other indignities.

101.    Ms. Lockett was damaged by the City's actions in an amount to be proven at trial.

102.    Ms. Lockett is entitled to the relief set forth in the prayer for relief below.

## COUNT II
## Retaliation in Violation of Title VII

103.    Ms. Lockett incorporates by reference all the preceding paragraphs of the Complaint.

104.    Title VII prohibits employers from retaliating against employees who report or oppose gender discrimination.

16

105.   Ms. Lockett is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

106.   The City is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

107.   The City unlawfully retaliated against Ms. Lockett, in violation of her rights under Title VII by subjecting her to different terms and conditions of employment than her male coworkers, demoting her from Interim Director of Watershed, and by twice failing to promote her to Director of Watershed because she engaged.

108.   The City's conduct constitutes unlawful retaliation in violation of Title VII.

109.   As a direct and proximate result of the City's actions, Ms. Lockett has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation and other indignities.

## COUNT III
## Retaliation in Violation of the FMLA

110.   Ms. Lockett incorporates by reference all the preceding paragraphs of the Complaint.

111.   At all times relevant, Ms. Lockett was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

112.   Ms. Locket was an eligible employee with a serious health condition as that term is defined by the FMLA and accompanying regulations, specifically 29 U.S. C. § 2611.

113.   Ms. Lockett had been employed with the City for more than 12 months and worked more than 1250 hours in the 12 months preceding the serious health condition for which she took FMLA leave.

114.   The City is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

115.   The City had more than 50 employees within a 75-mile radius of the location in which Ms. Lockett was employed in each of 20 or more consecutive calendar weeks in the current or preceding year within the meaning of 29 U.S.C. § 2601 *et seq*.

116.   Ms. Lockett took FMLA on a continuous basis from January 27, 2020 through February 24, 2020 for the serious health conditions of anxiety disorder and major depression; was continuously absent for COVID-19 in April 2020; and took intermittent FMLA leave throughout the summer of 2020 to care for her daughter, who suffered from a serious health condition.

117.   Ms. Lockett was investigated based on false allegations immediately after requesting FMLA leave in January 2020, was demoted despite being

exonerated in the investigation immediately after taking FMLA-eligible COVID-19 leave on April 30, 2020, and the City failed to promote her twice, all in retaliation for taking FMLA leave.

118.   The City took all the above-stated adverse actions in retaliation for Ms. Lockett exercising her right to take protected leave under the FMLA.

119.   The City's actions in retaliating against Ms. Lockett for exercising her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment on account of her exercise of her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(2).

120.   The effect of the City's actions has been to deprive Ms. Lockett of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, and other benefits due her because of her exercise of her rights under the FMLA.

121.   As a result, Ms. Lockett is entitled to both equitable and monetary relief for the City's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorney's fees and costs of litigation.

122.   Ms. Lockett is also entitled to liquidated damages for the City's willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **Prayer for Relief**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

a.  Issue a declaratory judgment that the City's acts, policies, practices, and procedures complained of herein violated Ms. Lockett's rights as secured under Title VII and the FMLA;

b.  Grant Ms. Lockett a permanent injunction enjoining the City, its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Ms. Lockett and others similarly situated because of the exercise of their rights under the FMLA and Title VII or because of her participation in this lawsuit;

c.  Grant to Ms. Lockett judgment in her favor and against the City under all counts of this Complaint;

d.  Grant Ms. Lockett full back pay from the date of Ms. Lockett's demotion and constructive discharge, taking into account all raises to which she would have been entitled, and all fringe and pension benefits of employment, with prejudgment interest thereon;

e.     Reinstate Ms. Lockett to her former position with the City or in the alternative, front pay to compensate her for her lost future wages, benefits, and pension;

f.     Grant to Ms. Lockett compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for her emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

g.     Grant to Ms. Lockett liquidated damages for the City's willful violations of the FMLA;

h.     Grant to Ms. Lockett a jury trial on all issues so triable;

i.     Award Ms. Lockett her reasonable attorney's fees and costs; and

j.     Grant such other and further equitable and monetary relief as the Court deems just and proper.

Respectfully submitted this 22nd day of October 2021.

**LEGARE, ATTWOOD & WOLFE, LLC**

**Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

Counsel for Plaintiff